ERNEST C. LONG AND WIFE, MARY BECKER LONG; JOHN M. RIGDON AND WIFE, PAULINE C. RIGDON; JOHN A. GOREE AND WIFE, BILLYE R. GOREE; ALLAN JOHN PETCH AND WIFE, ELSA M. PETCH; JACK GUYES ROBBINS AND WIFE, CATHERINE M. ROBBINS, AND PAUL P. PROUD, v. THOMAS B. BRANHAM.

(Filed 25 August, 1967.)

1. **Deeds § 19—**

    While restrictive covenants must be strictly construed, restrictions must be interpreted to preclude any uses contrary to the intent of the parties as expressed in the instrument or instruments creating the restrictions considered in the light of the circumstances existing at the time of the creation of the restrictions.

2. **Same—**

    Nothing else appearing, restrictions imposed upon a particular subdivision are for the benefit of that particular development and no other.

3. **Same—**

    A modification of a restrictive covenant by the parties to permit a semi-private driveway between two lots discloses that, without such modification, the restrictions precluded the use of any part of the lots for the purpose of an additional street.

4. **Same—**

    The owner of a lot in a subdivision is bound by any restrictions which an examination of the instruments in his chain of title would have disclosed.

**5. Same—— Under facts of this case, residential restrictions precluded construction of road connecting subdivision with adjacent development.**

The subdivision in question had a single road meandering through it, and each lot therein was subject to restrictive covenants limiting use to residential purposes only, with provision against further subdivision. An amendment was thereafter recorded between the developer and the purchasers of certain lots permitting a semi-private driveway between two of the lots. *Held:* The restrictive covenants preclude defendant lot owner from constructing across a part of his lot a roadway connecting the single street in the subdivision with the street in an adjoining subdivision, which subdivision adjoined unrestricted property, even though lots in such adjoining subdivision were restricted to residential purposes, the intent of the parties to keep the subdivision in question a quiet, residential area without the noise and hazards of increased vehicular traffic being apparent from the language of the instruments construed in the light of the then existing circumstances.

APPEAL by defendant from *McKinnon, J.,* 20 March 1967 Session of ORANGE.

Action to restrain defendant from constructing a street within a subdivision. The following facts are admitted or stipulated in the pleadings, and the parties waived a jury trial.

Plaintiffs are the owners of 9 lots in Timbercrest, a subdivision containing 14 lots in Chapel Hill Township, Orange County. Defendant owns 2 lots, Nos. 6 and 7. All the lots front on the one street in the subdivision, Timberly Drive, which winds through it somewhat in the shape of a broad-based "U". A plat of the subdivision is duly recorded in the office of the Register of Deeds of Orange County. All the parties to this action acquired their lots from a common source, James M. Field, the developer. By an instrument recorded on 27 March 1958, he bound all the lots by restrictive covenants, the pertinent portions of which are as follows:

"1. No lot shall be used except for residential purposes.

"2. Not more than one main family home structure shall be built on each lot and no subdivision of any lot shall be permitted, provided, however, this clause shall not be interpreted as denying contiguous property owners to exchange or to sell to each other small areas of their land for the purpose of improving the shape or dimension or providing a better building site on their lot. . . . (1,000 square feet were required for the ground floor of the main structure of a two-story house and 1,250 square feet for all others, which shall not be more than 2½ stories in height.)

"2½. Lots 5 and 6 may be subdivided by the present owners into not more than two lots each and the building restrictions

shall apply to the divided lots provided, however, that should the present owners sell the said lots or either of them without subdivision thereof, then no further subdivision shall be made.

"6.    Term.    These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

"7.    Enforcement.    Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damage."

On 10 July 1958, James M. Field still owned all lots in Timbercrest except Nos. 10 and 11, which had been sold to plaintiffs Petch. On that day, Field and wife and plaintiffs Petch varied the restrictive covenants by an amendment, recorded 21 July 1958, as follows:

"1.    A strip of land not more than 35 feet in width may be cut from the Eastern part of Lot No. 12 from the North side of Timberly Drive and along the line of Lot No. 11 to the L. T. Brame property for the purpose of providing a semi-private driveway from the said Drive to the Brame property.

"2.    In addition to and not excluding any other protective covenants and restrictions the plans of each family home structure, prior to any construction thereof, shall be submitted to and approved by each adjoining property owner in the Timbercrest Development and where two property owners are involved and they are unable to agree, then a third property owner in the Development acceptable to each of the other property owners, shall be appointed and the majority vote of the three shall control; should three or more property owners be involved, then a majority vote shall control."

Lots 5 and 6 are not now owned by the same parties who owned them in March 1958. Lot No. 5 is owned by plaintiffs Goree; defendant owns lot No. 6, the north line of which has been realigned. Defendant is also the owner of a 79.8-acre tract of land adjoining the west boundary line of lots 6, 7, and 8 of Timbercrest. This tract is not subject to the restrictive covenants which bind Timbercrest.

On or about 13 October 1966, defendant and his wife entered into a contract with a realtor, D. D. Branch, who undertook to subdivide and sell the 79.8-acre tract for defendant. Branch denominated this tract Oak Hills and divided it into lots containing at least 2 acres each. He prepared and recorded a map which shows defendant's lots 6 and 7 of Timbercrest as lot 9 of Oak Hills, except that a 60-foot strip along the south line of lot 6 is shown as a street, Forestwood Lane. This street connects Timberly Drive with Chesidy Circle in Oak Hills, a larger subdivision than Timbercrest. The south line of lot No. 6 is also a portion of the south boundary of Timbercrest. The property south of the proposed street (Forestwood Lane) is not subject to the restrictive covenants which bind Timbercrest. Timberly Drive has been maintained by the State Highway Commission for about 3 years, and it extends approximately 300 yards beyond the south line of the Timbercrest Subdivision.

On 15 February 1967, defendant and his wife recorded a declaration of restrictions for Oak Hills, which required each lot to be used only for residential purposes and one detached, single-family dwelling not to exceed 2½ stories in height. Floorspace for a two-story house was required to be not less than 1,000 square feet exclusive of garages, porches, and terraces; other dwellings must have at least 1,500 square feet of contiguous enclosed living area.

Alleging that the construction of a street along the southernmost portion of lot No. 6 of Timbercrest violated the restrictive covenants binding the subdivision, on 30 January 1967, plaintiffs instituted this action to restrain such construction.

Pending trial, Judge Leo Carr restrained defendant from constructing the street. At the trial, defendant stipulated that Oak Hills should be maintained as "a highly desirable residential subdivision" and assented that any judgment entered should "require him to maintain said subdivision for residential purposes only."

Upon the facts set out above, Judge McKinnon concluded as a matter of law that the proposed construction of Forestwood Lane across the southern portion of lot No. 6 would violate the restrictive covenants protecting the Timbercrest Subdivision. From the judgment permanently restraining defendant from constructing a street over or through any lot or parcel of land in the Timbercrest Subdivision, defendant appealed.

*Spears, Spears & Barnes by Marshall T. Spears, Jr., for plaintiff appellees.*

*Hofler, Mount & White by Charles W. White and Richard M. Hutson, II, for defendant appellant.*

SHARP, J.　The question posed is this: Do the restrictions which provide that no lot in Timbercrest Subdivision "shall be used except for residential purposes" prevent an owner from constructing across a part of his lot within the subdivision a roadway connecting a street in Timbercrest with one in the adjoining subdivision of Oak Hill, which is protected by restrictions substantially similar to those of Timbercrest? "Whether or not the maintenance, use, or grant of a right-of-way over restricted property is a violation of the restriction depends largely upon the language of the restriction, the objects sought to be obtained, and the conditions and circumstances surrounding the premises involved." 20 Am. Jur. 2d, Covenants, Conditions and Restrictions § 232 (1965).

In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions. *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619. The rules of construction are fully set out in Annot., Construction and application of covenant restricting use of property to "residential" or "residential purposes," 175 A.L.R. 1191, 1193 (1948), and they are succinctly stated in 20 Am. Jur., *Id.* § 187 as follows:

> "Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described, or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply. Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.

> "Such construction in favor of the unrestricted use, however, must be reasonable. The strict rule of construction as to restrictions should not be applied in such a way as to defeat the plain and obvious purposes of a restriction."

Where the meaning of restrictive covenants is doubtful "the surrounding circumstances existing at the time of the creation of the restriction are taken into consideration in determining the intention." Annot., Maintenance, use, or grant of right of way over restricted property as violation of restrictive covenant, 25 A.L.R. 2d 904, 905 (1952).

LONG v. BRANHAM.

It is quite clear that the use or grant of a right-of-way across property restricted to residential use to reach property used for business, commercial, or other forbidden enterprises violates the restrictive covenants. Restricted property cannot be made to serve a forbidden use even though the enterprise is situated on adjacent or restricted land. *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E. 2d 134; Annot., 25 A.L.R. 2d 904, 911 (1952); 20 Am. Jur. 2d *Id.* § 232; *McInerney v. Sturgis*, 37 Misc. 2d 302, 234 N.Y.S. 2d 965; *Laughlin v. Wagner*, 146 Tenn. 647, 244 S.W. 475, 478; *Wallace v. Clifton Land Co.*, 92 Ohio St. 349, 110 N.E. 940. In *Starmount Co. v. Memorial Park, supra,* this Court upheld an injunction against the use of a driveway across restricted property to a commercial cemetery. The proposed use, we said, would be tantamount to dedicating the lot to a prohibited business, or commercial, use.

As pointed out in Annot., Grant of right of way over restricted property as a violation of restriction, 39 A.L.R. 1083 (1925), differences in the wording of restrictions and in the conditions and circumstances surrounding the premises involved have caused courts to reach varying conclusions upon the question presented here.

"In general, it may be said that if the granting of the right of way seems to be inconsistent with the intention of the parties in creating or agreeing to the restriction and with the result sought to be accomplished thereby, the courts incline to hold such a grant to be a violation of the restriction, while if the granting of the right of way does not interfere with the carrying out of intention of the parties and the purpose of the restrictions, it will not be held to be a violation." *Id.* at 1083.

In the following five cases, courts refused to enjoin the use of a roadway over property restricted to residential use only:

*Bove v. Giebel*, 169 Ohio St. 325, 159 N.E. 2d 425, is the case most often cited in behalf of the contention that a road across restricted residential property in one subdivision to another similarly restricted development does not violate the restriction. In *Bove,* defendant purchased from the owner of lot No. 29 in Crestwood Subdivision a 6-acre tract adjoining it on the west. At the same time, he purchased a strip of land 25 feet wide across lot No. 29 as a means of ingress to and egress from the acreage outside the subdivision. This strip was his only means of access to the 6-acre lot upon which he proposed to impose the same restrictions applicable to Crestwood, *i. e.*, that it be used for residential purposes only, and upon which he intended to erect two private dwellings. Plaintiff, who owned lot No. 28 in the subdivision, sought to enjoin the use

of any part of lot No. 29 as a right-of-way. The Supreme Court of Ohio denied the injunction, stating:

"(I)t is apparent that, in order to conclude that the use of lot No. 29 proposed by defendants is forbidden, it would be necessary to revise the words of restriction No. 1 so that they will require not merely a use 'for residence purposes only' but 'for residence purposes *in the subdivision* only.'

\*   \*   \*

"(W)e have found no cases involving a situation such as presented by the instant case where the property outside the subdivision will be restricted by its owners to the same extent as that within the subdivision. Hence, our conclusion is that the owners of a lot in a subdivision, which lot is restricted to use 'for residence purposes only,' may use such lot as a means of ingress to and egress from adjoining land that they own outside the subdivision if they impose upon such outside land the same restrictions that are applicable to lots within the subdivision." *Id.* at 329, 330, 159 N.E. 2d at 428, 429.

In *R. R. Improvement Ass'n v. Thomas,* 374 Mich. 175, 131 N.W. 2d 920, the defendant owned the west 70 feet of lot No. 15 in Brookside Hills, a highly restricted residential subdivision. Defendants also owned a much larger tract (parcel 3), adjoining lot No. 15 to the south but outside the subdivision. Defendants desired to use parcel 3 for residential purposes and proposed to grade a roadway over the 70-foot strip to provide access to and from parcel 3 to South Hills Road, upon which lot 15 fronted. Defendants agreed to impose upon parcel 3 the same residential restrictions applicable to Brookside. At plaintiff's instance, the lower court enjoined the construction of the road as a violation of the restriction against any use other than residential purposes. Defendant relied upon *Bove v. Giebel, supra.* The Supreme Court of Michigan stated that it agreed with *Bove* "but with reservations." It remanded the case to the trial court with instruction to make the following findings:

"(W)hether and how, if at all, the present residential advantages enjoyed by Brookside lot owners will or might be adversely affected by appellant's proposal; whether a new traffic burden or maintenance problem will thereby be cast on dead end South Hills road, or for that matter, upon any other part of the subdivision's roadways; whether the private roads of the subdivision as dedicated have since become public roads; whether appellant's intended specifications for grading of the west 70 feet of Lot 15 and of location on parcel 3 of the two

proposed homes will in any way, aesthetically or otherwise, impair the restriction-assured enjoyment of home ownership in the subdivision; whether strict conformity with the restrictions has been waived (as claimed by appellant in her vain motion to set aside summary judgment) and, in general, whether there are fair, distinguished from carping or trifling, reasons for denial to appellant of that which is sought by her." *Id.* at 183-84, 131 N.W. 2d at 924-25.

In *Baxendale v. Property Owners Association, Etc.*, 285 App. Div. 1148, 140 N.Y.S. 2d 176, the plaintiff sought a declaratory judgment establishing his right to construct a public road over a lot in a subdivision restricted as follows: "All plots be known and described as residential plots. . . . No buildings of any kind shall be hereafter erected upon premises except one detached single dwelling. . . . Nothing shall be done therein which may be or become an annoyance or nuisance of the neighborhood." The court, noting that a road was not a building, held that nothing in these covenants prevented the construction on plaintiff's property of a public road for ingress to and egress from adjoining property. Such a road, it held, did not violate the restrictions against offensive trades and it was not *per se* an annoyance or a nuisance. *Accord, Mairs et al v. Stevens et al,* 268 App. Div. 922, 51 N.Y.S. 2d 286. Upon the same reasoning, in *Vinyard v. St. Louis County,* 399 S.W. 2d 99 (Mo. 1966), the Supreme Court of Missouri held that the use of a platted driveway on a portion of a lot in a residentially restricted subdivision for access to apartments on adjacent land was not prohibited. The applicable covenants (substantially those of *Baxendale, supra)* prohibited all structures except single-family dwellings and provided that none should be used for business purposes.

In the five next succeeding cases, the courts *did* enjoin the use of a roadway over property restricted to residential use only.

In *Duklauer v. Weiss,* 18 Misc. 2d 747, 182 N.Y.S. 2d 193, the plaintiffs were lot owners in the high-class subdivision of Westerleigh. They successfully sought to enjoin the construction of a road through two lots owned by defendants Weiss and Marx. The lots in Westerleigh could be "utilized only for a private residence for one family," and every plot had to be "not less than 3 acres." Defendant Kaufman, who owned 53 acres of unrestricted land south of the subdivision, had been granted two easements over the lands of his neighbors, Weiss and Marx, for the benefit of his 53 acres. In upholding plaintiffs' right to the injunction, the court said:

"A reading of the subject covenants individually or collectively leads this court to the inescapable conclusion that they were

enacted for the sole purpose of maintaining and preserving the highly residential character of all the properties located in the Westerleigh development even to the extent of forbidding the construction of the roads now contemplated by Kaufman. . . ."

Although Kaufman denied that he intended to subdivide the 53-acre parcel, the court noted that if he were allowed to construct the road, such a development was possible. It said: "Certainly, it could not then realistically be said that such roads were incidental, or an adjunct to, or served for the better enjoyment by Weiss and Marx of their respective residential homes."

The court found its previous decision in *Baxendale v. Property Owners Association, Etc., supra,* no obstacle to this decision. That case, it said, "is clearly distinguishable," for there "the courts were concerned with the type and character of building, *if erected,* rather than the use to be made of the property. The Appellate Division by a divided court held that a road was not a building within the meaning of the language employed in the restriction and that in the absence of a clear restriction against such use, the plaintiffs in that action were free to use a certain restricted lot as a means of ingress and egress to their adjoining land."

In *Donald E. Baltz, Inc., v. R. V. Chandler & Co.,* 151 S.E. 2d 441 (S.C. 1966), the developer sought to enjoin a purchaser from using a lot as a street in a subdivision restricted by covenants which provided: "1. No lot shall be used except for residential purposes. (This restriction is identical to the restriction in the case now before us.) * * * 3. No trailer . . . shall at any time be used as a residence. * * * 8. This property shall be used for single-family residences only. . . ." The defendant, who owned an unrestricted 40-acre tract adjoining the subdivision, purchased lot 18 therein for the purpose of opening a street connecting his 40-acre tract with a street wholly within the subdivision. The lower court enjoined the use of the street across lot No. 18. The Supreme Court affirmed, saying:

"Chandler urges that *Bove* is a 'compelling precedent' for the conclusion that the use of lot 18 as a private driveway to a single family residence situated on adjoining property is not a violation of the restrictions on the lot. We do not so regard it.

"When covenants 1 and 8, *supra,* are read together, as they must be, we find that the permitted residential use to which the property *shall* be put is as the site of a single family residence, and, of course, such other use as may be incidental to the occupation of the residence as a habitation. The covenants in *Bove*

simply did not require that the lot *shall* be used for a single family residence as the only permitted residential use." *Id.* at 444.

In *Klapproth v. Grininger*, 162 Minn. 488, 203 N.W. 418, 39 A.L.R. 1080, the plaintiff and the defendant Grininger owned adjoining lots fronting on Bear Lake. These lots were restricted "for residential purposes only." The defendant Grininger granted to the other defendants, who owned lots to the rear of the lake-front lots and across the highway from the plaintiff and defendant Grininger's property, a perpetual right-of-way (10 feet in width) across the eastern side of his lot adjoining the plaintiff's property. This right-of-way gave the other defendants, their families, and invited guests access to the lake. The defendants then constructed a dock, which projected 75 feet out into the lake at the end of the right-of-way. The plaintiff brought the action to enjoin the defendants from using the strip of land as a right-of-way. The court, without mentioning the construction of the dock, stated the question involved as follows: "The question here is whether the easement granted by Grininger infringes the restriction that the land 'shall be used for residential purposes only'." The answer was YES. "Such use of the land is not within any definition of a residential purpose; and devoting it to the purpose of a passageway for the occupants of other lands necessarily precludes using it for residence purposes, save, perhaps as a means of ingress and egress. We think that the use made of this strip of land is inhibited by the covenant, and that the learned trial judge reached the correct conclusion." *Accord, Edgewood Park Association v. Pernar*, 350 Mich. 204, 86 N.W. 2d 269.

In *Thompson v. Squibb*, 183 So. 2d 30 (Fla. D. C. App. 2d 1966), the plaintiff sought to enjoin the defendant from constructing and using a roadway over lot 88 in Mobile Homes Estates for the purpose of connecting that subdivision with defendant's subdivision of Thompson Estates, which adjoined Mobile Homes on the south. The use of land in Mobile Homes was restricted to "residential purposes only." The opinion does not disclose what restrictions, if any, protected Thompson Estates. In sustaining injunctive relief, the Florida court said:

> "In construing restrictive covenants the question is primarily one of intention, and the fundamental rule is that the intention of the parties as shown by the agreement governs, being determined by a fair interpretation of the entire text of the covenant. . . .
>
> "There is no ambiguity in the expression 'shall be used for resi-

dential purposes only.' As employed in this covenant, the word 'only' is synonymous with the word 'solely' and is the equivalent of the phrase 'and nothing else.' . . .

"It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of the adjoining subdivision to those of the subdivision for whose benefit the restrictive covenants were made is not in any sense a residential use or a use incidental thereto.

\* \* \*

". . . The defendant's roadway or drive across the property in no way facilitates the permitted residential use to which the property is restricted." *Id.* at 32-33.

The foregoing decisions illustrate the varying conclusions which different courts have reached. Each case must be determined on its own particular facts. *Edgewood Park Association v. Pernar, supra.* It is our opinion, however, that, nothing else appearing, restrictions imposed upon a particular subdivision are for the benefit of that particular development and no other. Therefore, if its lots are restricted to residential use only, that is tantamount to saying that they are restricted solely to residential use in that subdivision. We hold that the restrictive covenants in the Timbercrest Subdivision preclude the road proposed by defendant.

That the developer and purchasers of lots in Timbercrest understood that any use of a lot in the subdivision for a road or right-of-way would violate the restrictions against nonresidential use is clearly shown by the amendment to the restrictions which Field and the first purchasers, plaintiffs Petch, executed and recorded on 21 July 1958. This amendment then became a part of the contract imposing the restrictions, and it must be considered in determining the effect of the whole. *Callaham v. Arenson, supra.* The amendment was recorded at the time defendant purchased lots 6 and 7, presumably for the purpose of integrating his Oak Hills Subdivision with Timbercrest. An examination of the adverse conveyances of the grantors in his chain of title would have disclosed the amendment. Defendant was, therefore, chargeable with notice of it. See *Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360. If, without an amendment, "a semi-private driveway" between lots 11 and 12 of Timbercrest to the Brame property would have violated the restrictions against nonresidential use, *a fortiori,* the construction of a road to link Timbercrest with Oak Hill, a considerably larger subdivision, would violate the restrictions.

The map of Timbercrest reveals a small, tight subdivision through

which only one street, Timberly Drive, meanders. It is quite obvious that its developer and those who purchased lots therein did not contemplate that Timberly Drive should ever become a thoroughfare which would carry traffic from another subdivision. Their objective was a quiet, residential area in which the noise and hazards of vehicular traffic would be kept at a minimum and in which children could play with relative safety. It is likewise noted that the property immediately south of that portion of Forestwood Lane which is within lot 6 is outside both Timbercrest and Oak Hills subdivisions. The stipulations reveal that the property immediately to the south of the proposed road is not subject to the restrictions applicable to Timbercrest. If it is subject to any restrictions, the record does not so disclose.

The decision in *Callaham v. Arenson, supra,* relied upon by defendant, does not impinge upon the conclusion we reach here. In *Callaham,* the Boldridge Subdivision was originally composed of 11 lots. All but lot 5, which had a frontage of 245 feet, fronted 100 feet on Selwyn Avenue in the City of Charlotte. The side lines of each lot went back for 340 to 740 feet to Sugar Creek. The restrictions were that "all lots in the tract shall be known and described as residential lots." Each was required to have at least 20,000 square feet with a width of not less than 100 feet. Only one detached, single-family dwelling not in excess of 2½ stories, a private garage for not more than 3 cars, and outbuildings incidental to the residential use of the plot were allowed on any lot. Building lines, cost, and floorspace were also specified for the dwellings. There was no prohibition against the subdivision of the lots. Plaintiffs owned adjoining lots 6, 7, 8 and 9; defendants owned the remaining lots. Plaintiffs proposed to locate a 50-foot street, or roadway, along the line between lots 7 and 8 and to resubdivide their 4 lots from a point not less than 150 feet back from Selwyn Avenue, so as to establish two rows of new lots to front on the 50-foot street, with each lot having an area of not less than 20,000 square feet and a width of not less than 100 feet at the front building set-back line. After the proposed subdivision, each of the lots fronting on Selwyn Avenue would also have an area of not less than 20,000 square feet and a width at the front building set-back line of not less than 100 feet. The same restrictions would be inserted in the deeds to the new lots as were contained in the deeds to the original lots. When the defendants threatened to restrain the plaintiffs from carrying out their proposed resubdivision on the ground that it would violate the restrictive covenants protecting the property, the plaintiffs brought the action "to remove alleged cloud upon title to real estate." This Court, speaking through Johnson, J., found nothing in the restrictions which

would prohibit the resubdivision of the property and the opening up of the new street. It was noted that all the lots from 1 to 10, inclusive, shown on the map of the original subdivision contained areas largely in excess of 20,000 square feet, yet none of these lots was less than the minimum width of 100 feet.

> "Necessarily, then, the covenant fixing minimum standards as to width and area authorizes resubdivision of the original lots into units as small as 200 feet in depth. . . . In short, the plaintiffs' plan conforms with all requirements set out in the Boldridge restrictive covenant contract. * * * The three controlling paragraphs of the contract, when considered each in its proper relation to the others, harmonize and reflect an overall meaning which is free of inconsistency or repugnancy." *Id.* at 626, 80 S.E. 2d at 624, 625.

*Callaham* is clearly distinguishable from this case in that the streets which were the subject of controversy in the Boldridge Subdivision were all within the original subdivision itself. There was no plan to connect the new streets with those of any adjoining development. Here, the size and shape of the lots and the restrictions which contain limitations on resubdivision differentiate Timbercrest from Boldridge and disclose the different purposes and objectives of the parties involved in the two cases. The opening of additional streets within the Boldridge property was within the contemplation of the parties. In this case, it obviously was not. "The fundamental rule in construing restrictive covenants is that the intention of the parties as shown by the covenant governs." 20 Am. Jur. 2d, Covenants, Conditions, and Restrictions § 186 (1965).

The judgment of the lower court is

Affirmed.