WESTMINSTER COMPANY v. UNION MUTUAL STOCK LIFE INSURANCE CO. OF AMERICA

No. 8818SC1221

(Filed 15 August 1989)

**Deeds § 19.3— development of business park—restrictive covenant allowing retail use—bowling center included**

The term "retail" as used in a restrictive covenant between the parties could reasonably be construed to include a bowling center, and this construction was not contrary to the intent of the parties at the time they created the restrictions.

APPEAL by defendant from *Freeman, William H., Judge*. Judgment entered 22 July 1988 in Superior Court, GUILFORD County. Heard in the Court of Appeals 11 May 1989.

This is a civil action instituted pursuant to the Declaratory Judgment Act, G.S. sec. 1-253 *et seq.*, in which the parties seek judicial construction of restrictive covenants entered into by them in connection with the development of a five phase business park.

*Smith Helms Mulliss & Moore, by Larry B. Sitton, E. Garrett Walker, and Donna K. Smith, for plaintiff-appellee.*

*Bell, Davis & Pitt, P.A., by James R. Fox, for defendant-appellant.*

WESTMINSTER CO. v. UNION MUTUAL STOCK LIFE INS. CO.

[95 N.C. App. 117 (1989)]

JOHNSON, Judge.

After a trial on the merits of this action, the court made the following findings of fact to which defendant has not excepted. In December of 1983, plaintiff Westminster Company (Westminster) and defendant Union Mutual Stock Life Insurance Company (UNUM) entered into a real estate purchase agreement (the first agreement) whereby UNUM agreed to purchase from plaintiff 7.49 acres and also an office, warehouse and showroom building to be built by plaintiff, all to be known as Phase I of Oak Hollow Business Park. This was to be the first of five phases being developed by plaintiff on a parcel of real estate located in Greensboro, North Carolina to be known as Oak Hollow Business Park (the Park). The first agreement required, *inter alia*, that plaintiff subject all property within the Park to restrictive covenants acceptable to UNUM. Before closing the first agreement as to Phase I, the parties negotiated and agreed to the final form of their restrictive covenants which set forth certain generic categories of permitted uses. The recorded covenants, dated 20 December 1983, were to be applicable to all phases of the proposed Park and contained the following pertinent provision:

> *Section 1. Business Purposes.* The property and all improvements thereon shall be used only for office, warehouse, showroom, service and repair centers (except motor vehicles), distribution facilities and centers, laboratories, research and development, manufacturing, *wholesale and retail as permitted under applicable zoning ordinances,* office equipment and supplies, sales and service, restaurants, copying and printing offices, office and secretarial service establishments and/or assembly uses, and for street and driveway purposes.

(Emphasis supplied.) UNUM acquired Phase I after the restrictive covenants were agreed to.

In December of 1985, the same parties entered into a second real estate purchase agreement (the second agreement) for the purchase of Phase II of the Park, which also included an office, warehouse and showroom building to be built by plaintiff.

Defendant UNUM is presently the owner of Phases I and II. Plaintiff owns Phases III, IV and V which have not yet been developed, although Phase V has been subdivided by recorded plat. Pursuant to both the first and second purchase agreements, UNUM

was granted a limited right of first refusal on all subsequent phases of the Park.

In September of 1987, plaintiff received an offer from Leiserv, Inc. (Leiserv) to purchase the property contemplated to be Phase V of the Park for the purpose of building a bowling alley thereon. In accord with the above noted right of first refusal, plaintiff notified UNUM of Leiserv's offer and offered Phase V to UNUM on the same terms as Leiserv's offer. Defendant UNUM declined to exercise its right of first refusal and also informed plaintiff of its position that the sale of Phase V for development as a bowling alley would violate section one (quoted above) of the restrictive covenants. The proposed sale of Phase V to Leiserv has not been consummated. However, Leiserv continues to be interested in acquiring Phase V if plaintiff can obtain a judicial determination that the development of that property as a bowling alley would not violate the terms of the restrictive covenants. To that end, plaintiff Westminster instituted this action.

We turn now to section one of the restrictive covenants, entitled "Business Purposes," which was agreed to by Westminster and UNUM. That section stated in part that one category of permitted uses was "wholesale and retail as permitted under applicable zoning ordinances." In reference to this clause, the trial court found as fact that at the time the covenants were recorded the Greensboro City Ordinances classified the entire Park property as Industrial H, and this classification continues to the present under the recodification of the ordinances. The court further found that bowling centers are, and were, a permitted use under Industrial H classification, and may be operated on Phase V without violating Greensboro zoning ordinances. The court also found that, during negotiation of the restrictive covenants, the parties' representatives reviewed the Table of Uses for property zoned Industrial H. Further, the court found that neither purchase agreement entered into by the parties obligated plaintiff to restrict Phase V solely for construction of an office building. The agreements also did not obligate plaintiff to build the proposed office building discussed and depicted in certain marketing materials Westminster provided to UNUM.

Lastly, the court found as fact the following:

17. The bowling center that Leiserv would construct and which would be operated by its parent, Brunswick Corporation, upon Phase V would be similar to other bowling facilities owned by

WESTMINSTER CO. v. UNION MUTUAL STOCK LIFE INS. CO.

[95 N.C. App. 117 (1989)]

Leiserv. Leiserv's typical bowling facilities (including the one proposed to be located on Phase V) includes a pro shop in which bowling balls, shoes, gloves, clothing and other accessories are sold to the general public and a restaurant and bar at which food and beverages are sold to the general public. Thirty-two and two tenths percent (32.2%) of the 1987 revenues of Leiserv's present bowling center in Friendly Shopping Center, Greensboro, which would be relocated to Phase V, are derived from pro shop sales, restaurant and bar sales, vending machines sales, shoe rental and miscellaneous revenues. Leiserv pays North Carolina retail sales taxes on the revenues generated from these categories of activities. Such revenues are consistent with the past operations of Leiserv's typical facilities and are indicative of the operations of the bowling center that would be located on Phase V.

Based on these findings, the court concluded, as a matter of law, that a bowling center is a "retail" use as the term is used in the parties' covenants; that zoning ordinances applicable to the Park permit the operation of a bowling center; and that the parties' restrictive covenants do not prohibit the operation of a bowling center in the Park, including Phase V.

On appeal, defendant UNUM argues that the trial court erred in declaring that the restrictive covenants at issue permitted use of Phase V for a bowling alley because it was contrary to the stipulated evidence and applicable law. Specifically, defendant contends, *inter alia*, that the ruling was contrary to the manifest intent of the parties and the surrounding circumstances existing when the covenants were created.

Before addressing the merits of defendant's argument, we note again the fact that defendant did not except to any of the findings of fact made below. In a nonjury trial, such as this, findings of fact made by the court and not excepted to are "presumed to be supported by the evidence and are binding on appeal." *Jackson v. Collins*, 9 N.C. App. 548, 552, 176 S.E.2d 878, 880 (1970) (citations omitted). Our review is confined to determining whether the findings of fact support the conclusions of law and the judgment reached. *Salem v. Flowers*, 26 N.C. App. 504, 216 S.E.2d 392 (1975).

Turning now to the substantive law governing the construction of restrictive covenants, our Supreme Court has stated the following:

WESTMINSTER CO. v. UNION MUTUAL STOCK LIFE INS. CO.

[95 N.C. App. 117 (1989)]

In construing restrictive covenants, the fundamental rule is that the intention of the parties governs, and that their intention must be gathered from study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions. *Callaham v. Arenson*, 239 N.C. 619, 80 S.E.2d 619 . . . .

"Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described, or to grant rights to persons in whose favor it is not clearly shown such restrictions are to apply. Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capable of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.

"Such construction in favor of the unrestricted use, however, must be reasonable. The strict rule of construction as to restrictions should not be applied in such a way as to defeat the plain and obvious purposes of a restriction." [*quoting* 20 Am. Jur. 2d, *Covenants, Conditions, etc.* sec. 187 (1965)].

Where the meaning of restrictive covenants is doubtful "the surrounding circumstances existing at the time of the creation of the restriction are taken into consideration in determining the intention." Annot., Maintenance, use, or grant of right of way over restricted property as violation of restrictive covenant, 25 A.L.R. 2d 904, 905 (1952).

*Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 238-39 (1967).

With these principles in mind, we consider the covenant at issue which states in pertinent part that one category of permitted uses includes "wholesale and retail as permitted under applicable zoning ordinances." The parties have stipulated and the trial court found that bowling centers are a permitted use in the Table of Uses for the Industrial H zoning category in the Greensboro zoning ordinances. Therefore, the issue becomes whether the term "retail" can reasonably be construed to include a bowling center. We hold that it can be so construed and that a bowling center is a permitted use under the covenant at issue.

Defendant urges that we apply a narrow meaning to the term "retail" to include only the business of selling tangible goods to the public. We are convinced, however, that "retail" has a broader connotation in both legal and everyday usage. In our increasingly service oriented economy, the term has come to mean any number of "retail activities" in which a product, service, or privilege is sold to the ultimate consumer. For example, the term "retail banking" or "retail financial services" are today in common parlance as well as legal usage. *See United States v. Manufacturers Hanover Trust Co.*, 240 F.Supp. 867, 896 (S.D.N.Y. 1965).

We also find support for a definition of "retail" which includes service activities in the North Carolina Retail Installment Sales Act, G.S. sec. 25A-1 *et seq.* which applies to sales of both goods and services. G.S. sec. 25A-1. Further, "service" is defined to include "privileges with respect to . . . recreation." G.S. sec. 25A-5(a)(2).

We believe that the term "retail" is legitimately susceptible of both the broader meaning discussed above and its more narrow definition of selling tangible goods to the public. In such a situation, under the principles set forth in *Long, supra*, we must favor the construction which allows for the free use of land.

Defendant urges, however, that finding the bowling center a permitted use is contrary to the intent of the parties at the creation of the covenants. To discern their intent, we must consider *all* the provisions in the instrument creating the restrictions, *Callaham, supra*, as well as the circumstances surrounding the creation of the covenants when language used is ambiguous. *Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E.2d 824 (1971); *Long, supra*.

Defendant states in its brief that at the time of its two purchases, both parties intended the Park to be made up of "offices and traditional commercial enterprises," and not amusement enterprises. Defendant points to certain marketing materials supplied by plaintiff depicting the proposed design and landscaping of the entire Park. Nothing, however, in either purchase agreement required plaintiff either to subdivide the remaining property in the Park or to construct an office building on Phase V.

The restrictions at issue were created when defendant was involved in purchasing the Phase I office, warehouse and showroom building. The remainder of the Park was undeveloped. The parties

N.C. ELECTRIC MEMBERSHIP CORP. v. DUKE POWER CO.

[95 N.C. App. 123 (1989)]

specifically did not at that time limit the Park only to office, warehouse or showroom use. Rather, the scope was expanded to fourteen generic uses which even included manufacturing. Under defendant's exhibit 18, a summary of the zoning ordinances' Table of Uses, "manufacturing" could include the manufacture of such things as acetylene gas, machine tools, paint, iron and steel products, and tar. Defendant also agreed to allow "wholesale . . . as permitted under applicable zoning ordinances." Again, under defendant's exhibit that would permit uses such as automobile dealerships, the sale of farm machinery, and lumberyards.

It is difficult to imagine that defendant agreed to permit uses such as manufacturing acetylene gas, and automobile dealerships, and at the same time intended to prohibit a bowling center as less compatible with its office, warehouse and showroom building. This is especially true of the proposed bowling center which the court found would derive about one-third of its revenue from sales.

To summarize, we find that the term "retail" as used in the covenant at issue may reasonably be construed to include a bowling center. We also do not consider this construction to be contrary to the intent of the parties at the time they created the restrictions. Therefore, we hold that the trial court was correct in holding that the operation of a bowling center is a permitted use under the parties' restrictive covenants.

Affirmed.

Judges COZORT and GREENE concur.