PARKWOOD ASSOCIATION, Plaintiff v. CAPITAL HEALTH CARE INVESTORS, a North Carolina Limited Partnership and LUTHERAN FAMILY SERVICES IN THE CAROLINAS, Defendants

No. COA97-1532

(Filed 4 May 1999)

## 1. Deeds— restrictive covenants—group home

The trial court erred by entering summary judgment for defendants in an action to determine whether a group home for emergency care for undisciplined, delinquent or at risk youth violated subdivision restrictive covenants. The framers of the restrictive covenants sought to establish a harmonious and attractive single family residential development where the health and safety of residents were secured and the only purposes permitted, other than residential use, were day nurseries, kindergarten schools, and fraternal or social clubs or meeting places.

PARKWOOD ASS'N v. CAPITAL HEALTH CARE INVESTORS

[133 N.C. App. 158 (1999)]

Houses of detention, reform schools, and institutions of kindred character were excluded; houses of detention and reform schools are institutions devoted to the custody and reformation of juvenile delinquents and this home is an institution of kindred character.

## 2. Deeds— restrictive covenants—housing not limited based on handicapping condition

A restrictive covenant which prohibited a group home for undisciplined, delinquent or at risk youth did not limit housing based on a handicapping condition.

Appeal by plaintiff from judgment entered 16 October 1997 by Judge Leon Stanback in Durham County Superior Court. Heard in the Court of Appeals 25 August 1998.

*Eagen, Eagen & Adkins, by Philip S. Adkins, for plaintiff-appellant.*

*Manning, Fulton & Skinner, P.A., by William C. Smith, Jr., for defendants-appellees.*

TIMMONS-GOODSON, Judge.

This is an action to enforce subdivision restrictive covenants. The following facts are stipulated or admitted in the pleadings. Defendant Capital Health Care Investors ("Capital") purchased a residence at 5323 Revere Road, located in the Parkwood area in Durham, North Carolina. The Parkwood subdivision is subject to restrictive covenants. The pertinent portions prohibit nuisances, any use except residential use, any houses of detention, reform schools, asylums, institutions of kindred character or multi family use. Capital then leased the residence to defendant Lutheran Family Services in the Carolinas ("Lutheran"). Lutheran moved its "Dencontee House" ("Dencontee") to the residence.

Dencontee is a temporary emergency shelter group home for children between the ages of eleven and seventeen years. The program was developed to provide 15 to 30 days of emergency care for up to 5 children at a time. The target population are the undisciplined, delinquent, or at risk youth who are in need of emergency placement to determine needed services, or children entering the program through a voluntary placement agreement between parents and the program. Most of the children are referred to Dencontee by the Durham County

Department of Social Services or the county court system. The children in the house are monitored 24 hours a day by at least two supervisors, who act as surrogate parents. Dencontee receives funding from state agencies, and the surrogate parents are paid for their services out of a common operating fund.

Plaintiff, Parkwood Association ("Parkwood"), filed a declaratory judgment action against Capital and Lutheran (collectively "defendants") seeking a determination of whether the house for children in the Parkwood Subdivision area violated the governing restrictive covenant of the area. Both parties moved for summary judgment based on the pleadings and certain attached stipulations. On 16 October 1997, the trial court entered summary judgment in favor of defendants, thus permitting the house to remain in the subdivision. Parkwood appeals the ruling.

[1] The issue presented by this appeal is whether the existence of the Dencontee House in the Parkwood subdivision violates the governing restrictive covenant. Parkwood asserts that the trial court erred by granting summary judgment for defendants, because Dencontee violates the plain and obvious purpose of the restrictive covenant. We agree with Parkwood and reverse the judgment of the trial court.

In *Hobby & Son v. Family Homes*, our Supreme Court stated the fundamental rules that apply to restrictive covenants:

> While the intentions of the parties to restrictive covenants ordinarily control the construction of covenants, such covenants are not favored by the law, and they will be strictly construed to the end that all ambiguities will be resolved in favor of the unrestrained use of the land. The rule of strict construction is grounded in sound considerations of public policy: It is in the best interest of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent. Even so, we pause to recognize that clearly and narrowly drawn restrictive covenants may be employed in such a way that the legitimate objectives of a development scheme may be achieved. Provided that a restrictive covenant does not offend articulated considerations of public policy or concepts of substantive law, such provisions are legitimate tools which may be utilized by developers and other interested parties to guide the subsequent usage of property.

302 N.C. 64, 70-71, 274 S.E.2d 174, 179 (1981) (citations omitted).

The intent of the parties may be obtained from "study and consideration of *all* the covenants contained in the instrument or instruments creating the restrictions." *Long v. Branham,* 271 N.C. 264, 268, 156 S.E.2d 235, 238 (1967). Any restrictions will not be aided or extended by implication or enlarged by construction to affect lands not specifically described in the covenant. *Id.* Doubt must favor the unrestricted use of property. *Id.* If a restrictive covenant is ambiguous it will be given its "natural meaning" at the time the covenant was created. *Forest Oaks Homeowners Assn. v. Isenhour,* 102 N.C. App. 322, 324, 401 S.E.2d 860, 862 (1991). Therefore, the ambiguous term will be given its customary definition as it existed at the time of the restrictive covenant's creation. *Angel v. Truitt,* 108 N.C. App. 679, 682, 424 S.E.2d 660, 662 (1993).

The record reflects that the framers of the restrictive covenant wanted Parkwood to be a harmonious and attractive single family residential development where the health and safety of the residents were secured. The framers sought to establish such an environment by limiting the land use to residential purposes and by excluding cemeteries, crematories, houses of detention, reform schools, asylums, institutions of kindred character, buildings for the manufacture or storage of gun powder or explosives, and slaughterhouses. The only purposes permitted, other than residential use, were day nurseries, kindergarten schools, and fraternal or social clubs or meeting places.

Parkwood argues that Dencontee falls within one of the exclusions contained in the restrictive covenant pertaining to institutions for children. We are compelled to agree.

Article Six of Parkwood's restrictive covenant entered in 1960 provides as follows:

ARTICLE SIX, Section 5: There shall never at any time be erected, permitted, or maintained upon any part of The Property any cemetery or crematory; any house of detention, reform school, asylum, or institution of kindred character; any building for the manufacture or storage of gun powder or explosives; nor any slaughter house.

Both "houses of detention" and "reform school" are institutions devoted to the custody and/or reformation of juvenile delinquents. *See* Webster's New International Dictionary 616, 1909 (3d ed. 1966)

(defining "detention home" as "a house of detention for juvenile delinquents" and defining "detention" as "a period of temporary custody prior to disposition"; defining "reform school" as "a reformatory for boys and girls" and defining "reformatory" as "a penal institution to which young or first offenders or women are committed and in which repressive and punitive measures are held to be subordinated to training in industry and exercise of the physical, mental, and moral faculties").

The meaning of the catch-all phrase "institutions of a kindred character" must be examined. The word institution is defined as an "establishment." *Id.* at 1171. Kindred is defined as "a group of related individuals" or "a natural grouping." *Id.* at 1243. Thus, the term refers to establishments of a similar character or related nature.

In the instant case, the parties stipulate that the criteria for admission include juveniles who have been "adjudicated undisciplined or delinquent in Juvenile Court or [who are] at risk of being adjudicated undisciplined or delinquent." The North Carolina Juvenile Code defines an undisciplined juvenile as a juvenile "who is unlawfully absent from school; or who is regularly disobedient to his parent, guardian, or custodian and beyond their disciplinary control; or who is regularly found in places where it is unlawful for a juvenile to be; or who has run away from home." N.C. Gen. Stat. § 7A-517(28) (1995). A delinquent is a juvenile "less than 16 years of age who has committed a crime or infraction under State law or under an ordinance of local government[.]" N.C. Gen. Stat. § 7A-517(12) (1995). Using the aforementioned definitions, it follows that Dencontee is an "institution of kindred character" to the enumerated institutions in the restrictive covenant. Thus, the presence of Dencontee in the Parkwood subdivision is an impermissible use of the land. Based on the stipulations of the parties that define the criteria for admission and the intent of the framers of the restrictive covenant, Dencontee violates the plain and obvious purpose of the restrictive covenant.

[2] Parkwood next argues that the restrictive covenant does not violate any federal or state fair housing laws. Although there are several restrictions in the state and federal fair housing laws, the handicapping condition is the only one argued in the briefs. Thus, we will specifically address that issue. N.C.R. App. P. 28(a). In the instant case, we find that the violated restriction does not limit housing on the basis of a handicapping condition.

The order granting summary judgment in favor of defendants is reversed and remanded to the trial court for entry of summary judgment in favor of Parkwood.

Reversed.

Judges GREENE and SMITH concur.