W.T. BUIE AND WIFE, MARTHA C. BUIE; ROSSIE G. GARDNER AND WIFE, RAMONA M. GARDNER; C. KENNETH WOOD AND WIFE, SYLVIA WOOD; RICHARD L. HALL, JR. AND WIFE, LOIS S. HALL; THOMAS J. WELCH AND WIFE, DIANE F. WELCH; RALPH W. HULLENDER AND WIFE, GERRY HULLENDER; FRALLEY G. MITCHELL AND WIFE, DORIS MITCHELL; HARDING McDOWELL AND WIFE, MARY W. McDOWELL; RALPH BRENNER AND WIFE, DIANE BRENNER; HAROLD R. HEDRICK AND WIFE, RUTH R. HEDRICK; MILDRED F. ISRAEL; BENNIE L. ROGERS AND WIFE, JACQUELINE D. ROGERS; DONALD M. ROSS, JR. AND WIFE, MARY LOU ROSS; JAMES B. MERRELL; CHERYL K. MOORE; LINDA L. COFFIN; BOBBY L. ROGERS AND WIFE, JUNE H. ROGERS; ABDUL J. AWAN AND WIFE, RIZWANA L. AWAN; JOHNNY J. WHITE AND WIFE, RUBY WHITE; CLAUDE O. DRAUGHN, JR. AND WIFE, PATSY K. DRAUGHN; AND THOMAS LAUDER, JR.; PLAINTIFFS V. HIGH POINT ASSOCIATES LIMITED PARTNERSHIP, DELOS SAMUEL HEDGECOCK, JR., JASPER LEE HEDGECOCK, ARLENE HEDGECOCK GUY, MARGARET HEDGECOCK DAVIS, AND ROBERT WATSON HEDGECOCK, DEFENDANTS

No. 94-315

(Filed 6 June 1995)

## 1. Deeds § 85 (NCI4th)— drainage system on restricted lots— nonresidential use

The trial court did not err in finding a drainage system built on defendants' lots to be a nonresidential use in violation of

restrictive covenants, and there was no merit to defendants' contention that, since the system benefited residential property by assisting with drainage and preventing flooding problems within the subdivision, it served a residential purpose, since a covenant limiting property to residential use implies the property is not to be put into service incident to a forbidden commercial enterprise, even if the enterprise is located on adjacent unrestricted property.

**Am Jur 2d, Covenants, Conditions, and Restrictions § 196.**

**2. Deeds § 85 (NCI4th)— restricted lots used for improper purpose—order requiring restoration of lots proper**

The trial court did not abuse its discretion and order a remedy disproportionately harmful to defendants compared to the harm suffered by plaintiffs where the court issued an injunction prohibiting defendants from maintaining a drainage system on their restricted lots to support a nonresidential use of adjacent unrestricted property and ordering defendants to return the restricted property to its undeveloped residential nature.

**Am Jur 2d, Covenants, Conditions, and Restrictions § 196.**

**3. Judgments § 53 (NCI4th)— property transferred—transferee not joined—judgment in name of original owner proper**

There was no merit to defendant partnership's contention that the judgment should be vacated because its interests in commercial property and the easements over restricted property were transferred to another entity prior to entry of judgment, since joinder of a transferee is not mandatory; an action continued in, and a judgment entered in, the name of the original party alone is valid; and neither party made a motion to join the transferee, nor did either object to an entry of judgment against defendant prior to entry of judgment.

**Am Jur 2d, Pleading §§ 382 et seq.**

Appeal by defendant High Point Associates Limited Partnership from judgment entered 20 October 1993 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 11 January 1995.

BUIE v. HIGH POINT ASSOCIATES LTD. PARTNERSHIP

[119 N.C. App. 155 (1995)]

Plaintiffs own real property in a subdivision subject to restrictive covenants. These covenants state in part that the property "shall be used for residential purposes only." The individual defendants, who did not appeal, own the real property located within the subdivision that is the focus of this lawsuit and which is also subject to the same restrictive covenants as plaintiffs' property.

In November 1991, the individual defendants conveyed several undeveloped tracts of land to defendant High Point Associates Limited Partnership (HPALP). These tracts adjoin the property involved in this action, but are not part of the subdivision and are not subject to any restrictive covenants. HPALP purchased this property in order to build a commercial shopping center and parking lot on the undeveloped land.

To ease foreseeable drainage problems that could be caused by the new shopping center, the individual defendants also conveyed to HPALP certain easements appurtenant over the adjoining restricted property they own within the subdivision. These easements allowed HPALP to construct a drainage system on the restricted property consisting of a dry retention pond and various other devices designed to regulate water flow.

Plaintiffs brought suit against the individual defendants and HPALP, alleging the drainage system constituted a prohibited non-residential use of the property. After a hearing without a jury upon the evidence in the record, the trial court entered judgment for plaintiffs. The judgment enjoins defendants from maintaining a drainage system to support a non-residential property and orders that they return the restricted property to its "undeveloped state or nature . . . as existed before November 6, 1991." From this judgment, defendant HPALP appeals.

*Baker & Boyan, by Walter W. Baker, Jr. and Jeffrey L. Mabe, for plaintiff-appellees.*

*Smith Helms Mulliss & Moore, by Bruce P. Ashley and Mary V. Cavanagh, for defendant-appellant.*

McGEE, Judge.

Defendant HPALP argues three issues on appeal: (1) the court erred in finding the drainage system to be a non-residential use in violation of the restrictive covenants; (2) the court erred in requiring the defendants to return the restricted property to its undeveloped resi-

dential state, and (3) the judgment should be vacated since HPALP transferred its interest in the easements and shopping center to another partnership prior to the entry of judgment. For the reasons stated below, we affirm the trial court's entry of judgment.

I.

[1] Defendant-appellant HPALP first assigns as error the trial court's conclusion that the easements and drainage system constitute a non-residential use of the property in violation of the restrictive covenants. HPALP argues that since the system benefits residential property by assisting with drainage and preventing flooding problems within the subdivision, it serves a residential purpose. We disagree.

The trial court made a finding of fact that the construction of the drainage system constituted a non-residential use of the restricted property. If a jury trial is waived, the court's findings of fact have the same effect as a jury verdict and are conclusive on appeal if there is evidence to support them, even if the evidence might support findings to the contrary. *Blackwell v. Butts*, 278 N.C. 615, 619, 180 S.E.2d 835, 837 (1971).

In this case, the record clearly includes evidence to support the trial court's findings. The easements allowing construction of the drainage system were granted by the individual defendants to HPALP contemporaneously with the conveyance of the property on which the commercial shopping center was built. As HPALP admitted in its answer to plaintiff's complaint, the drainage system was constructed to "serve and support and as part of the commercial development." This admission is binding, and when considered in conjunction with relevant case law, is conclusive of the issue.

An admission in a pleading which admits a material fact becomes a judicial admission in the case. *Crowder v. Jenkins*, 11 N.C. App. 57, 62, 180 S.E.2d 482, 485 (1971). It has the same effect as a jury finding and is conclusive upon the parties and the trial judge. *Id* at 63, 180 S.E.2d at 486. Paragraph 5 of plaintiffs' complaint alleged in part: "Pursuant to the purported easements . . . [HPALP] began to construct various drainage devices . . . upon [the restricted property] to *serve and support and as part of the commercial development*." (emphasis added). In its answer, HPALP stated: "The allegations of Paragraph 5 are admitted." Therefore, HPALP made a conclusive admission that the drainage system serves a non-residential purpose by supporting a commercial enterprise.

**BUIE v. HIGH POINT ASSOCIATES LTD. PARTNERSHIP**

[119 N.C. App. 155 (1995)]

While conceding the drainage system may serve a commercial purpose, HPALP argues that since it also serves the residential community by preventing flooding, it should be considered a residential use of the property. We find this argument unconvincing when the plain language of the covenant states: "This property shall be used for residential purposes *only*." (emphasis added). The expression "shall be used for residential purposes only" is not ambiguous. As used in this covenant, the word "only" is synonymous with the word "solely" and is the same as the phrase "and nothing else."

In *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E.2d 134 (1951), our Supreme Court held a covenant limiting property to residential use implies the property is not to be put into service incident to a forbidden commercial enterprise, even if the enterprise is located on adjacent unrestricted property. *Starmount* at 616, 65 S.E.2d at 137. *Accord, Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967). In *Starmount*, the Court prohibited the defendant from maintaining a driveway over restricted property connecting two commercial properties, holding that "[s]uch use would violate the restrictions in question for it would be tantamount to dedicating the . . . tract to a prohibited business or commercial purpose." *Starmount* at 616, 65 S.E.2d at 137. Here, HPALP's construction of the drainage system to benefit the commercial property virtually dedicated the restricted property for commercial purposes in violation of the restrictive covenants.

It is true that restrictive covenants are not favored in the law, and nothing can be read into a restrictive covenant to enlarge its meaning beyond the plain language of the covenant. *Julian v. Lawton*, 240 N.C. 436, 440, 82 S.E.2d 210, 212 (1954). However, such covenants must be reasonably construed to execute the intent of the parties, and the rule of strict construction may not be used to defeat the plain and obvious purposes of the restriction. *Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 239 (1967). Since HPALP admits the drainage system also serves a commercial purpose, the system violates the restrictive covenant. Therefore, we hold the trial court correctly ruled the drainage system constitutes a non-residential use in violation of the restrictive covenant.

We disagree with HPALP's argument that equity compels a finding that the drainage system serves a residential purpose and does not violate the restrictive covenant. Even if, as HPALP alleges, removal of the drainage system will result in increased flooding within the sub-

division, the plaintiffs are free to enforce their property rights. "[E]quity cannot balance the relative advantages and disadvantages of a covenant and grant relief against its restrictions merely because it has become burdensome. . . . [I]t is not the way of equity to override the law or to invalidate contracts or to destroy property rights." *Tull v. Doctors Building, Inc.*, 255 N.C. 23, 40-41, 120 S.E.2d 817, 829 (1961) (quoting *Vernon v. R.J. Reynolds Realty Co.*, 226 N.C. 58, 36 S.E.2d 710 (1946)).

## II.

**[2]** HPALP next assigns as error the trial court's issuance of an injunction prohibiting defendants from maintaining a drainage system to support a non-residential use of the property and ordering the defendants to return the restricted property to its undeveloped residential nature. HPALP argues the defendants will suffer irreparable harm if they are required to remove the drainage system and, therefore, the trial court abused its discretion in ordering a remedy disproportionately harmful to the defendants compared to the harm suffered by the plaintiffs. Again, we disagree.

When enforcing a restrictive covenant and restoring the status quo, a mandatory injunction is the proper remedy. *Wrightsville Winds Homeowners' Assn. v. Miller*, 100 N.C. App. 531, 536, 397 S.E.2d 345, 347 (1990), *disc. review denied*, 328 N.C. 275, 400 S.E.2d 463 (1991). As stated by our Supreme Court in *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E.2d 388 (1954):

> Mandatory injunction has been frequently granted to compel the removal of a building or a part thereof which has been erected in violation of some restrictive covenant as to the use of land. . . . Unless the injury is so slight as to be within the maxim 'de minimis,' mandatory injunction will issue to compel removal of encroachments. In the case of one who deliberately violates a building restriction, a mandatory injunction to compel the modification of his building so as to comply with the restrictions cannot be avoided on the theory that the loss caused by it will be disproportionate to the good accomplished.

*Ingle* at 390, 82 S.E.2d at 391 (quoting 14 Am. Jur. *Covenants, Conditions, and Restrictions* 672). In *Ingle*, the Court held a mandatory injunction was appropriate to require the defendant to remove a building constructed nearer than fifty feet from the street in violation of restrictive covenants. *Ingle* at 391, 82 S.E.2d at 396.

An order requiring the removal of a drainage system is no more burdensome than an order requiring the removal of a building. Further, it is clear in this case that the individual defendants had actual notice of the restrictions and HPALP had at least record notice, if not actual notice, of the restrictions. Therefore, the defendants cannot be heard to complain that the injunction is disproportionately harmful to them.

A mandatory injunction may be an appropriate remedy to compel removal of structures erected in violation of restrictive covenants. *Crabtree v. Jones*, 112 N.C. App. 530, 534, 435 S.E.2d 823, 825 (1993), *disc. review denied*, 335 N.C. 769, 442 S.E.2d 514 (1994). The issuance of such an injunction depends upon the equities of the parties and such balancing is clearly within the province of the trial court. *Id.* "Whether injunctive relief will be granted to restrain the violation of such restrictions is a matter within the sound discretion of the trial court . . . and the appellate court will not interfere unless such discretion is manifestly abused." 20 Am. Jur. 2d *Covenants, Conditions, and Restrictions* § 313 (1965). We find no abuse under these facts. Accordingly, the trial court's issuance of a mandatory injunction ordering defendants to return the restricted property to the undeveloped residential state or nature of the property as it existed prior to 6 November 1991 is affirmed.

III.

[3] Finally, HPALP claims the judgment should be vacated because HPALP's interests in the commercial property and the easements over the restricted property were transferred to North Pointe Partners prior to entry of judgment. HPALP argues that because the court was informed of the transfer, and North Pointe was represented in court, it was error to enter judgment against HPALP. We find no merit to this argument.

After any transfer of interest other than by death, a lawsuit involving that interest continues in the name of the original party. However, the court may, upon the motion of any party, allow the transferee to be joined with the original party. N.C.R. Civ. P. 25(d). A judgment rendered in the name of the original party-transferor, without objection from the adverse party, is valid. W. Brian Howell, *Shuford North Carolina Civil Practice and Procedure* § 25-5 (4th ed. 1992). *See also, International Rediscount Corp. v. Hartford Accident & Indem. Co.*, 425 F. Supp. 669 (D. Del. 1977), holding that substitution or joinder after a transfer of interest is not mandatory under Fed.

SLOAN v. MILLER BLDG. CORP.

[119 N.C. App. 162 (1995)]

R. Civ. P. 25, and absent a motion for substitution, the action is continued in the name of the original party, with the successor in interest bound by any judgment.

Like the federal rule, the North Carolina statute uses permissive, not mandatory language. The North Carolina rule states: "[T]he court *may* allow the person to whom the transfer is made to be joined with the original party." N.C.R. Civ. P. 25(d) (emphasis added). Since joinder of the transferee is not mandatory, an action continued in, and a judgment entered in, the name of the original party alone is valid.

We also note that, in this case, neither party made a motion to join North Pointe, nor did either party object to an entry of judgment against HPALP prior to the entry of judgment. Defendant HPALP did not object to the entry of judgment against itself until after the judgment was rendered. Therefore, the judgment entered against HPALP is valid. Further, North Pointe also appeared in this matter, stating in open court that North Pointe was the successor in interest to HPALP. Accordingly, there exists no prejudice to HPALP's or North Pointe's rights that would require us to vacate this judgment.

The judgment of the trial court declaring the drainage system to be a non-residential use in violation of the restrictive covenants, and the issuance of an injunction ordering defendants to return the property to its undeveloped residential state is affirmed.

Affirmed.

Judges LEWIS and WYNN concur.